**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **HAMZA MAZUMDER, ANTHONY BRACARELLO and LUKE MARTIN,** individually and on behalf of all others similarly situated,<br><br>        **Plaintiffs,**<br><br>    v.<br><br>**SPOTIFY USA INC.,**<br><br>        **Defendant.** | **Case No.**   24-4077<br><br><br>**COMPLAINT**<br><br><br>**Demand for Jury Trial** |

**CLASS ACTION COMPLAINT**

INTRODUCTION ............................................................................................................... 2

    I.    NATURE OF THE CASE ..................................................................................... 2

    II.    PARTIES ............................................................................................................... 4

    III.    JURISDICTION AND VENUE ........................................................................... 5

FACTUAL ALLEGATIONS ............................................................................................... 5

    I.    The Spotify Car Thing and Its Advertised Benefits ........................................... 5

    II.    PLAINTIFFS' EXPERIENCES ........................................................................... 9

        A.    Plaintiff Anthony Bracarello ......................................................................... 9

        B.    Plaintiff Luke Martin ................................................................................... 10

        C.    Plaintiff Hamza Mazumder .......................................................................... 11

        D.    Putative Class Members ............................................................................... 12

    III.    TOLLING THE STATUTE OF LIMITATIONS ............................................... 13

CLASS ACTION ALLEGATIONS ................................................................................... 14

CAUSES OF ACTION ...................................................................................................... 17

    I.    COUNT ONE: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ...... 17

    II.    COUNT TWO: TRESPASS TO CHATTELS ................................................. 18

    III.    COUNT THREE: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 ("GBL") 19

    IV.    COUNT FOUR: VIOLATION OF NEW YORK GENERAL BUSINESS LAW  § 350 ("GBL") ................................................................................................... 21

    V.    COUNT FIVE: VIOLATIONS OF FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT ............................................................................................... 23

    VI.    COUNT SIX: VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICE & CONSUMER PROTECTION LAW ..................................................................... 26

    VII.    COUNT SEVEN: UNJUST ENRICHMENT ................................................... 30

REQUESTS FOR RELIEF ................................................................................................ 31

DEMAND FOR JURY TRIAL ......................................................................................... 31

## INTRODUCTION

1.      Plaintiffs Hamza Mazumder, Anthony Bracarello, and Luke Martin ("Plaintiffs"), by and through counsel, bring this Class Action Complaint against Defendant Spotify USA Inc., ("Spotify"), individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

## I.      NATURE OF THE CASE

2.      Plaintiffs bring this case individually and on behalf of all similarly situated persons ("Class Members") who purchased the Spotify Car Thing ("Car Thing"), which is a device used to connect to car dashboards and auxiliary outlets to enable drivers to listen to and navigate Spotify.  Car Thing was designed, manufactured, distributed, advertised, marketed, sold, and/or leased by Spotify or its parent, subsidiary, or affiliates.

3.      All of the claims asserted herein arise out of Spotify's decision to unilaterally and without recourse cut off its support of the Car Thing and announce its plan to terminate its functionality as of December 9, 2024, through a forced firmware update which will result in the device becoming obsolete. As a result, Plaintiffs and Class Members are left with nothing more than a paperweight that cost between $50 and $100.

4.      Plaintiffs and Class Members would not have purchased a Car Thing if they knew that Spotify would stop supporting the product within just a few months or years of purchase.

5.      Plaintiffs and Class Members reasonably did not expect Spotify to discontinue its support for, and disable use of, the Car Thing simply because Spotify did not want to maintain the servers for the Car Thing, therefore forcing its customers to download firmware that rendered the product useless.

6.      The Car Thing was only functional for a commercially unreasonable period of time.

7.      Spotify misrepresented in press releases and advertisements that the Car Thing is "Designed for your drive,"[1] and that, "Car Thing is its own thing. Let your phone do phone stuff. Car Thing has one job and does it awesomely."[2] Spotify also omitted from its marketing, advertising, and sales of the Car Thing material information regarding its intention to prematurely render the Car Thing obsolete.

8.      Many owners of the Car Thing have complained in public forums and to Spotify about the discontinuance of the product and have requested that Spotify address and remedy the problem by providing a refund, equivalent replacement, or allow the Car Thing to be open-sourced for use outside of Spotify's control. Spotify has stated that it will not refund, or replace, the Car Thing, instead recommending that Consumers "reset your Car Thing to factory settings and safely dispos[e] of your device following local electronic waste guidelines."[3]

9.      As a direct and proximate consequence of Spotify' conduct, Plaintiffs and the other members of the Class purchased and own a useless product, and have been damaged thereby.

10.      Had Plaintiffs and other members of the Class known that Spotify manufactured the Car Thing with the ability to brick the product at any point after its introduction to the marketplace and in Spotify's total discretion, they would not have bought a Car Thing, or would have paid substantially less for them.

---

[1] Source: https://web.archive.org/web/20220301032553/https://carthing.spotify.com/ (last visited: May 24, 2024).
[2] *Id.*
[3] Source: https://support.spotify.com/us/article/car-thing-discontinued/ (last visited: May 24, 2024).

11.     Plaintiffs and the Class seek actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to Plaintiffs and the Class.

## II.     <u>PARTIES</u>

12.     Plaintiff Hamza Mazumder is a New York citizen who lives in Bronx, located in Bronx County, New York. Mr. Mazumder purchased Car Thing from Spotify. His product was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Spotify.

13.     Plaintiff Anthony Bracarello is a Florida citizen who lives in Mary Esther, located in Okaloosa County, Florida. Mr. Bracarello purchased Car Thing from Spotify. His product was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Spotify.

14.     Plaintiff Luke Martin is a Pennsylvania citizen who lives in Mohnton, located in Berks County, Pennsylvania. Mr. Martin purchased Car Thing from Spotify. His product was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Spotify.

15.     Defendant Spotify is a corporation formed and existing under the laws of the State of Delaware with its headquarters at 4 World Trade Center, 150 Greenwich Street, New York, New York 10007.  Spotify is one of the largest music streaming services in the U.S. and undertakes substantial business activities throughout the country, including in this District.

16.     Spotify, through its various entities, designed, manufactured, advertised, marketed, distributed, and sold its Car Thing in this District and many other locations in the United States and worldwide.

17.     At all relevant times, Defendant was engaged in the business of marketing, advertising, distributing, selling, and warranting its products, including the Spotify Car Thing, in New York, Florida, Pennsylvania and throughout the United States of America.

III.     **JURISDICTION AND VENUE**

18.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), as the Class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from Defendant and seeks in the aggregate more than Five Million Dollars ($5,000,000.00), exclusive of costs and interest.

19.     Defendant is amenable to personal jurisdiction in New York. A substantial portion of the wrongdoing alleged to have occurred took place in New York, and Spotify conducts business within the state to be sufficient to be considered present in New York.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Plaintiff Mazumder is a resident of this judicial district, a substantial part of the events giving rise to the claims set forth herein occurred and emanated from this district, and Defendant's conduct has injured members of the Class residing in this district. Accordingly, this Court has jurisdiction over this action, and venue is proper in this judicial district.

## FACTUAL ALLEGATIONS

I.     **The Spotify Car Thing and Its Advertised Benefits**

21.     Spotify first announced the Car Thing in 2019 and it was officially  introduced to the US market in 2021 with an advertising campaign describing it as "[t]he best thing to happen in cars since the stereo."[4, 5] Featuring a 3.97-inch display, the Car Thing mounts to any air vent stereo speakers, has a giant rotating dial in the right-hand corner and a small button on the bottom.

---

[4] Source: https://marcommnews.com/spotifys-new-ad-celebrates-the-relatable-habit-of-staying-in-the-car-to-finish-a-song/ (last viewed May 24, 2024).
[5] Source: https://www.youtube.com/watch?v=-X_2TT43PRs (last viewed May 24, 2024).

The Car Thing is powered via USB-C through a car's 12V socket with a USB-A adapter. There are also five additional buttons at the top of the Car Thing that serve a navigational function.









22.     June Sauvaget, Spotify's then-Global Head of Consumer & Product Marketing described the Car Thing as "putting Spotify front and center of the driving experience with product enhancements and content, such as 'Your Daily Drive' as the perfect companion to the car commute," because "[t]he experience of commuting and listening to music and news in your car is so universal to every driver's daily routine."[6]

23.     Spotify's Vice President, Alex Bodman, described the introduction of Car Thing: "[t]he creative started with a simple insight that we rarely discuss, but everyone can relate to," … "[t]hen the team got to work on bringing the insight to life with a healthy dose of Spotify's sense of humor. Hopefully it makes people laugh, while reminding them how much better driving is when you have the perfect soundtrack."[7]

24.     Starting as a limited release, Spotify announced that it "developed Car Thing because we saw a need from our users, many of whom were missing out on a seamless and personalized in-car listening experience. No matter the year or model of your vehicle, we feel everyone should have a superior listening experience." Soon thereafter, Spotify opened the

---

[6] Source: https://marcommnews.com/spotifys-new-ad-celebrates-the-relatable-habit-of-staying-in-the-car-to-finish-a-song/ (last visited May 24, 2024).
[7] *Id.*

offering to any U.S. Consumer: "[w]ith Car Thing, we'll now be bringing our entire catalogue of music and podcasts to a wider range of users across an even wider range of vehicles."[8]

25.     Ultimately, Spotify's representation about the Car Thing—that "no matter the year or model of your vehicle, we feel everyone should have a superior listening experience"—proved to be false.

26.      Following an initial, small, invite-only distribution, Spotify sold the Car Thing for $89.99 before shipping and taxes.

27.      Further, consumers were required to maintain a Spotify Premium account to use the Car Thing: "Car Thing requires a Spotify Premium account. Just connect Car Thing to your phone (for data), and connect your phone to your car and voila — hands-free music."[9]



28.     Plaintiffs, Class Members, and other Car Thing purchasers relied upon these representations that the Car Thing would work as long as the user maintained a Spotify Premium account.

---

[8]  Source:  https://newsroom.spotify.com/2021-04-13/spotify-launches-our-newest-exploration-a-limited-release-of-car-thing-a-smart-player-for-your-car/ (last visited: May 24, 2024).
[9]  Source:  https://web.archive.org/web/20220301061255/https://carthing.spotify.com/ (last visited: May 24, 2024).

29.     Had Plaintiffs and Class Members been aware that Spotify sold the Car Thing knowing it was manufactured with the ability to be remotely made obsolete, they would not have purchased the Car Thing or would have paid substantially less than they paid.

30.     Had Plaintiffs and Class Members been aware that Spotify sold the Car Thing knowing Spotify could and might remove all of the Car Thing's functionality, they would not have purchased the Car Thing or would have paid substantially less than they paid.

31.     When they purchased their Car Thing Plaintiffs and the Class reasonably assumed that the servers supporting the Car Thing would remain available to support the product.

32.     On May 23, 2024, Spotify announced that it would discontinue the Car Thing. "We have made the decision to discontinue Car Thing. This means that Car Thing will no longer be operational."[10]

33.      Spotify announced that, "After December 9th, 2024, Car Thing will be discontinued and will no longer be operational."[11]

## II.    PLAINTIFFS' EXPERIENCES

A.    Plaintiff Anthony Bracarello

34.     Sometime in 2022 Mr. Bracarello received an email from Spotify touting its new hands-free listening device and voice-control capabilities. After reading the advertisement, Mr. Bracarello decided to purchase a Car Thing from Spotify.

35.     After receiving the Car Thing, Mr. Bracarello decided to purchase a second one for his wife's vehicle. Mr. Bracarello used the Car Thing to operate his Spotify account and listen to music hands-free using the Car Thing's voice-control feature.

---

[10] Source: https://support.spotify.com/us/article/car-thing-discontinued/ (last visited: May 24, 2024).
[11] *Id.*

36.     On or about May 23, 2024, Mr. Bracarello received an email from Spotify notifying him that the Car Thing's service was being discontinued and that it would no longer be operational for any aspect of its use on December 9, 2024.

37.     Mr. Bracarello's experience with the Car Thing is typical of all Car Thing purchasers, as reflected by customer complaints. Since the announced discontinuance of Car Thing, numerous users have complained about Spotify's planned obsolescence of the product by shutting down the servers, and failing to offer an appropriate remedy to individuals who purchased the Car Thing.

38.      Neither Spotify nor any of its subsidiaries or representatives informed Mr. Bracarello of the possibility of Spotify's forced obsolescence of the Car Thing, especially so soon after purchase.

39.     Had Mr. Bracarello been advised of the possible forced obsolescence at or before the point of sale, he would not have purchased his Car Thing or would have paid significantly less for the Car Thing.

40.     Mr. Bracarello did not receive the benefit of his bargain.

B.     <u>Plaintiff Luke Martin</u>

41.     Mr. Martin purchased his Car Thing on November 3, 2021 from Spotify. He paid $84.79 for the device.

42.     Mr. Martin saw the initial advertisements for the Car Thing and attempted to order it as soon as it became available.

43.     Mr. Martin was initially put on the wait list for the purchase of the Car Thing. As soon as he received an email from Spotify notifying him that the Car Thing was now widely available for purchase, Mr. Martin bought his Car Thing.

44.     Mr. Martin was interested in the Car Thing because the vehicle he drives has Bluetooth capability but does not have a digital touch screen.

45.     On or about May 23, 2024, Mr. Martin received an email from Spotify notifying him that the Car Thing's service was being discontinued and that it would no longer be operational for any aspect of its use on December 9, 2024.

46.     Mr. Martin's experience with the Car Thing is typical of all Spotify Car Thing purchasers, as reflected by customer complaints. Since the announced discontinuance numerous users have complained about Spotify's planned obsolescence of the product by shutting down the servers, and failing to offer an appropriate remedy to individuals who purchased the Car Thing.

47.      Neither Spotify nor any of its subsidiaries or representatives informed Mr. Martin of the possibility of Spotify's forced obsolescence of the Car Thing, especially so soon after purchase.

48.     Had Mr. Martin been advised of the possible forced obsolescence at or before the point of sale, he would not have purchased his Car Thing or would have paid significantly less for the Car Thing.

49.     Mr. Martin did not receive the benefit of his bargain.

C.     Plaintiff Hamza Mazumder

50.     Mr. Mazumder purchased his Car Thing on February 8, 2022 from Spotify. He paid $87.09 for the device.

51.     On or about May 23, 2024, Mr. Mazumder received an email from Spotify notifying him that the Car Thing's service was being discontinued and that it would no longer be operational for any aspect of its use on December 9, 2024.

52.     Mr. Mazumder's experience with the Car Thing is typical of all Spotify Car Thing purchasers, as reflected by customer complaints. Since the announced discontinuance numerous

users have complained about Spotify's planned obsolescence of the product by shutting down the servers, and failing to offer an appropriate remedy to individuals who purchased the Car Thing.

53.     Neither Spotify nor any of its subsidiaries or representatives informed Mr. Mazumder of the possibility of Spotify's forced obsolescence of the Car Thing, especially so soon after purchase.

54.     Had Mr. Mazumder been advised of the possible forced obsolescence at or before the point of sale, he would not have purchased his Car Thing or would have paid significantly less for the Car Thing.

55.     Mr. Mazumder did not receive the benefit of his bargain.

D.     <u>Putative Class Members</u>

56.     Putative Class Members have lodged similar complaints with their Car Thing as a result of Spotify's planned discontinuance of its service.

57.     Thousands of purchasers of the Car Thing have and will experience the forced obsolescence of their purchase. Complaints by consumers posted on the Internet demonstrate that the dissatisfaction is widespread.

58.     One consumer stated, "Can't believe they're just discontinuing it [i.e. Car Thing] with no compensation. A waste of $90 or whatever when it came out. I get not making them anymore, but they should still support it or offer something, even a free month of premium."[12]

59.     Another consumer, a Spotify Community member, stated, "The recent announcement on the decision to make existing Car Thing users' devices completely inoperable in December is unconscionable. … It's EXTREMELY disappointing to have it just remotely

---

[12] Source: https://www.reddit.com/r/CarThing/comments/1cywpze/comment/l5cc77p/ (last visited: May 24, 2024).

rendered completely useless. I hope Spotify can shed light on why it's seemingly impossible to just let the devices keep functioning."[13]

60.     Another Spotify Community member said:" I'd rather not just dispose of the device. I think there is a community that would love the idea of having a device we can customize and use for other uses other than a song playback device. Would Spotify be willing to maybe unlock the system and allow users to write/flash 3rd party firmware to the device?"[14]

61.     As another consumer put it: "Doesn't feel great that there is literally no alternative other than trashing it. Feels like we're being punished for supporting them. Dissuades me from buying anything Spotify puts out in the future. I feel like there would be some way to approach this without being like 'yeah we're done. Just throw it out it's a waste of money now.'"[15]

## III.     TOLLING THE STATUTE OF LIMITATIONS

62.     Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that their Car Thing would be discontinued and forced to become obsolete within the time period of any applicable statutes of limitation.

63.     Spotify's active and knowing concealment of the intent to discontinue the Car Thing and shut down the servers when the product became unprofitable[16] after Car Thing was first introduced in 2021; Spotify's willful, false and misleading statements regarding the multiple

---

[13]Source:https://community.spotify.com/t5/Car-Thing/Spotify-car-thing-discontinued/m-p/6088578/highlight/true#M2585 (last visited: May 24, 2024).
[14]  Source:   https://arstechnica.com/gadgets/2024/05/pleas-for-open-sourcing-refunds-as-spotify-plans-to-brick-car-thing-devices/ (last visited: May 24, 2024).
[15]Source:
https://www.reddit.com/r/CarThing/comments/1cywpze/comment/l5ccejb/?utm_source=share&utm_medium=web3x&utm_name=web3xcss&utm_term=1&utm_content=share_button (last visited: May 24, 2024).
[16]  Source:   https://techcrunch.com/2022/07/27/spotify-exits-short-lived-car-thing-hardware-play-as-reports-q2-maus-of-433m-offsetting-russia-exit-and-service-outage/ (last visited May 28, 2024).

uses of the product; and that the Car Thing only requires a Spotify Premium account, results in the tolling of any applicable statute(s) of limitation.

64.     Plaintiffs and the Classes could not have reasonably discovered Spotify's true intentions until May 2024 when Spotify announced the device was being discontinued.

65.     Spotify's active concealment of, and breach of its duty to disclose the truth about its intent to brick the Spotify Car Thing tolls any applicable statute(s) of limitations.

66.     Based on the foregoing, Spotify is estopped from relying on any statutes of limitations in defense of this action.

## **CLASS ACTION ALLEGATIONS**

67.     Plaintiffs bring this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

68.     The Class is defined as:

All persons in the United States and its territories who purchased a Spotify Car Thing prior to May 23, 2024.

69.     The New York Subclass is defined as:

All persons in New York who purchased a Spotify Car Thing prior to May 23, 2024.

70.     The Pennsylvania Subclass is defined as:

All persons in Pennsylvania who purchased a Spotify Car Thing prior to May 23, 2024.

71.     The Florida Subclass is defined as:

All persons in Florida who purchased a Spotify Car Thing prior to May 23, 2024.

72.    Excluded from the Class and Subclasses are Defendant and its subsidiaries and affiliates, executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, and their immediate families.

73.    Plaintiffs reserve the right to amend or modify the Class and Subclass definitions after they have had an opportunity to conduct discovery.

74.    <u>Numerosity</u>: Fed. R. Civ. P. 23(a)(1). The Class is so numerous that the joinder of all members is unfeasible and not practicable. While the precise number of Class Members has not been determined at this time, Plaintiffs are informed and believe that thousands of consumers have purchased a Spotify Car Thing. The members of the Class are so numerous that joinder of all members would be impracticable. The Class is composed of an easily ascertainable, self-identifying set of individuals and entities that purchased the Car Thing.  Due to the fact that all purchasers had to purchase their Car Thing through Spotify, Spotify has the contact information for each class member. The precise number of Class members can be ascertained by reviewing documents in Defendants possession, custody, and control.

75.    <u>Commonality and Predominance</u>: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.  whether the Spotify Car Thing was improperly discontinued;

    b.  whether the Spotify Car Thing was forced into obsolescence by Spotify;

    c.  Whether Spotify's conduct violates warranty laws, and other laws as asserted herein;

    d.  Whether, as a result of Spotify's omissions and concealments of material facts related to its intent to render the Car Thing useless prematurely, Plaintiff and the other members of the Class have suffered ascertainable losses, and whether Plaintiff and the

other members of the Class are entitled to monetary damages and/or other remedies, and if so the nature of any such relief;

e.   whether Spotify's acts and/or omissions entitle Plaintiffs and the other members of the Class to treble damages, attorneys fees, prejudgment interest and cost of suit;

f.   whether the Consumer Fraud and Abuse Act was violated by Spotify's acts;

g.   whether Spotify has committed trespass to chattels;

h.   whether Spotify has been unjustly enriched through the sale of the Spotify Car Things;

i.   whether, as a result of Spotify's concealment or failure to disclose material facts, Plaintiffs and Class Members acted to their detriment by purchasing Spotify's Car Thing;

j.   whether Spotify violated the consumer protection laws in New York, Pennsylvania, Florida, or the laws of other states;

k.   Whether Spotify's conduct violates warranty laws, and other laws as asserted herein;

l.   whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

76.    Typicality: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the other members of the Class have suffered similar injury by the same wrongful practices by Spotify. The claims of Plaintiffs and the other members of the Class all arise from the same wrongful practices and course of conduct, and are based on the same legal and remedial theories.

77.    Adequate Representation: Plaintiffs will fully and adequately assert and protect the interests of the members of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the members of the Class.

78.    Superiority of Class Action and Impracticability of Individual Actions: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is not economically

feasible and is procedurally impracticable. While the aggregate damages sustained by the members of the Class are in the millions of dollars, and are no less than five million dollars, upon information and belief, the individual damages incurred by each member of the Class resulting from Spotify's wrongful course of conduct are too small to warrant the expense of individual suits. The likelihood of individual members of the Class prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Spotify has acted or refused to act on grounds generally applicable to the members of the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## **CAUSES OF ACTION**

### I.   **COUNT ONE: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**

18 U.S.C. §1030 et seq.
(Plaintiffs, individually, and on behalf of the Class)

79.   Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

80.   This claim is brought on behalf of the Class.

81.   Plaintiffs' and the class members' Spotify Car Thing units constituted protected computers within the meaning of the computer Fraud and Abuse Act, 18 U.S.C. §1030.

82.     Defendant announced its intention to discontinue support for the Spotify Car Thing, and to ensure the Car Thing will no longer be operational, as of December 9, 2024.

83.     On December 9, 2024, the updated software distributed by Spotify is intended to cause damage to the Spotify Car Thing operating system so that the Car Thing will be rendered nonfunctional and/or obsolete.

84.     Spotify Car Thing owners did not provide Spotify with authorization to access their Spotify Car Things for purposes of destroying the functionality of the Car Thing.

85.     The firmware/software update Spotify intentionally transmits to the Car Thing will in fact cause damage to it, resulting in an obsolete and useless product.

86.     The firmware update intends to damage all Spotify Car Thing units sold in the United States and cause aggregate damages in excess of $5,000,000.

**II.     COUNT TWO: TRESPASS TO CHATTELS**

(Plaintiffs, individually, and on behalf of the Class)

87.     Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

88.     On May 23, 2024 and at all relevant times prior thereto Plaintiffs and those similarly situated were the owners of and in possession of working Spotify Car Things. These Car Things units each cost between $50 to $100 at retail.

89.     On May 23, 2024 Defendant announced its intention to unlawfully take from Plaintiffs' possession and the possession of all class members an operational Spotify Car Things through its forced discontinuance, leaving Plaintiffs and the Class with an obsolete product, now, a worthless brick.

90.     By reason of the planned unlawful taking of the property, Plaintiffs and the class has each sustained damages consisting of the fair market value of the property in the amount of between $50 and $100.

### III.     COUNT THREE: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 ("GBL")

(N.Y. GEN. BUS. LAW § 349)
(Plaintiff Mazumder individually, and on behalf of the New York Subclass)

91.     Plaintiffs incorporate by reference and re-alleges the preceding paragraphs as if fully set forth herein.

92.     Plaintiff Mazumder brings this cause of action individually and on behalf of the New York Subclass.

93.     New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

94.     By failing to disclose and actively concealing the its intent to discontinue and make obsolete the Car Thing after an unreasonably short period of time, Defendant engaged in deceptive acts or practices prohibited by the New York General Business Law § 349, including: (i) advertising its goods with intent not to sell them as advertised; (ii) representing that its Car Thing works with just a Spotify Premium account; (iii) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (iv) representing that its goods have been supplied in accordance with a previous representation when they have not.

95.     Defendant's actions as set forth above occurred in the conduct of trade or commerce.

96.     In the course of their business, Defendant failed to disclose and actively concealed their intent to discontinue service to the product and/or their ability to externally discontinue usage

of the products as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

97.     Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Car Thing.

98.     Defendant's unfair or deceptive acts or practices, including these concealments, and omissions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the capabilities and uses of, and the true value of the Car Thig.

99.     Defendant intentionally and knowingly misrepresented material facts regarding the Car Thing with an intent to mislead Plaintiffs and Class Members.

100.    Defendant owed Plaintiff and the Class Members a duty to disclose the true intention and capability of the Car Thing because Defendant: (a) possessed exclusive knowledge of its intent to discontinue usage of the Car Thing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the use and reliability of the foregoing generally, while withholding material facts from Plaintiffs and Class Members that contradicted these representations.

101.    Defendant's failure to disclose and active concealment of its intention to discontinue the Car Thing were material to Plaintiffs and Class Members.

102.    Plaintiffs and the Class Members suffered ascertainable loss caused by Defendant's misrepresentations and its failure to disclose material information. Had they been aware of the unreasonably short period the Car Thing would function, Plaintiffs and the Class

Members either would have paid less for their Car Thing or would not have purchased them at all. Plaintiffs and the Class Members did not receive the benefit of their bargain as a result of Defendant's misconduct.

103.    Plaintiffs and the other Class Members were injured as a result of Defendant's conduct in that Plaintiffs and the other Class Members overpaid for their Car Thing and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Spotify's misrepresentations and omissions

## IV.    COUNT FOUR: VIOLATION OF NEW YORK GENERAL BUSINESS LAW    § 350 ("GBL")

(N.Y. GEN. BUS. LAW § 350)
(Plaintiffs, individually, and on behalf of the New York Subclass)

104.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

105.    Plaintiffs bring this cause of action individually and on behalf of the New York Subclass.

106.    New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of …representations [made] with respect to the commodity…." N.Y. Gen. Bus. Law § 350-a.

107.    Spotify caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to

Spotify, to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

108.    Spotify has violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and omissions regarding the Car Things and its ability to be used by Consumers with a Spotify Premium account, as described above, which was material and likely to deceive a reasonable consumer.

109.    Plaintiffs and the other Class Members have suffered injury, including the loss of money or property, as a result of Spotify's false advertising. In purchasing their Car Things, Plaintiffs and the other Class Members relied on the misrepresentations and/or omissions of Sportify with respect to the longevity, quality, functionality, and reliability of the Car Things. Spotify's representations turned out to be untrue because Spotify unilaterally had the capability to discontinue usage and render the Car Things obsolete. Had Plaintiffs and the other Class Members known this, they would not have purchased their Car Things and/or paid as much for them.

110.    Accordingly, Plaintiffs and the other Class Members overpaid for their Car Thing and did not receive the benefit of the bargain for their Car Things.

111.    Plaintiffs, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to enjoin Spotify from continuing their unfair, unlawful and/or deceptive practices. Plaintiffs and the other Class Members are also entitled to recover their actual damages or $500, whichever is greater. Because Spotify acted willfully or knowingly, Plaintiffs and the other Class Members are entitled to recover three times actual damages, up to $10,000.

## V.      COUNT FIVE: VIOLATIONS OF FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT

(Fla. Stat. §§ 501.201, et seq.)
(Plaintiff Bracarello individually, and on behalf of the Florida Subclass)

112.      Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

113.      Plaintiff Bracarello brings this cause of action individually and on behalf of the Florida Subclass.

114.      Plaintiffs assert a claim under Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which makes it unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce…." Fla. Stat. § 501.204.

115.      Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff and Florida Subclass Members are "Consumers" within the meaning of § 501.203(7), Florida Statutes.

116.      Section 501.203(8), Florida Statutes defines "Trade or Commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. 'Trade or Commerce' shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity."

117.      The advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise of Car Thing by Spotify to Plaintiff and Florida Subclass Members is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

118.    At all times relevant hereto, Spotify was engaged in trade or commerce, as defined under the FDUTPA. Fla. Stat. § 501.203(8).

119.    Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Spotify's acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Spotify's trade or commerce pursuant to section 501.204, Florida Statutes.

120.    Specifically, Spotify developed, manufactured, advertised, solicited, provided, offered, and/or distributed, by sale, or otherwise the Car Thing to Florida consumers, despite knowledge that: 1) Spotify did not intend to maintain Car Thing for use by consumers for a reasonable or expected amount of time, and 2) that Spotify was able to unilaterally discontinue Car Thing to consumers without any recourse like Plaintiff and Florida Subclass members.

121.    Spotify violated the FDUTPA when it sold its' Car Thing, representing that they would work with a Spotify Premium account. Spotify further violated FDTUPA by failing to disclose    to    Plaintiff    and    Florida    Subclass    members    that Spotify was able and willing to discontinue use of its Car Thing after and unreasonably short period of time, despite Spotify's prior knowledge of its' intent to do so.

122.    Spotify's deceptive trade practices were designed to induce Plaintiff and Florida Subclass members to purchase the Car Thing and to avoid the cost of associated with refunding, or maintaining the Car Thing for use across the United States.

123.    Spotify both concealed and failed to disclose material facts about the Car Thing to induce purchase of Car Thing. Any reasonable consumer would consider information about its

longevity or ability for usage by consumers to be important factors when deciding whether to purchase a product. Indeed, no reasonable consumer would knowingly purchase a Car Thing, if that consumer knew that Spotify intended to make the product obsolete shortly thereafter..

124.    Plaintiff and Florida Subclass Members reasonably relied on Spotify's misrepresentations and omissions and expected that the Car Thing would maintain its ability to function for its ordinary use while maintaining a Spotify premium account and reasonably expected Spotify would honor its warranty obligations, as represented to them at the time they purchased their Car Things.

125.    Plaintiffs and Florida Subclass Members suffered injury in-fact as a direct result of Spotify's violations of the FDUTPA in that they have paid a premium for the Car Thing that are soon to be made obsolete and unusable, at Spotifty's behest. Plaintiffs and Florida Subclass members did not receive the benefit of the bargain they made when purchasing their Car Thing.

126.    Plaintiffs and Florida Subclass members have also been denied the use of their Car Thing after December 2024, as a result of Spotify's conduct alleged herein.

127.    Had Spotify disclosed the unreasonably short period Spotify intended to maintain the Car Thing, Plaintiffs and Florida Subclass members would not have purchased the Car Thing or would have paid less.

128.    Ford's unconscionable, illegal, unfair and deceptive acts and practices violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiffs and Class Members have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

129.    Plaintiffs and Florida Subclass Members are therefore entitled to relief, including restitution, actual damages, costs and attorneys' fees under section 501.2105 of the FDUTPA.

Pursuant to relevant case law, Plaintiffs and Florida Subclass Members may also be entitled to treble damages and punitive damages resulting from violations of the FDUTPA. Plaintiffs and Florida Subclass Members are also entitled to injunctive relief, seeking an order enjoining Ford's unfair and/or deceptive acts or practices.

## VI.   COUNT SIX: VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICE &  CONSUMER PROTECTION LAW

(73 Pa. C.S.A. § 201-1, et seq.)
(Plaintiff Martin individually, and on behalf of the Pennsylvania Subclass)

130.   Plaintiffs incorporate by reference and re-alleges the preceding paragraphs as if fully set forth herein.

131.   Plaintiff Martin brings this cause of action individually and on behalf of the Pennsylvania Subclass.

132.   Plaintiffs and other Class Members are persons within the context of the UTPCPL, 73 P.S. § 201-2(2).

133.   Defendant Spotify is a person within the context of the UTPCPL, 73 P.S. § 201-2(2).

134.   At all times relevant hereto, Spotify was engaged in trade or commerce as defined under the UTPCPL, 73 P.S. § 201-2(3).

135.   Plaintiffs and the proposed Class are "consumers" who purchased the Car Thig for personal, family or household use within the meaning of the UTPCPL, 73 P.S. §§ 201-2(2) and 201.9-2.

136.   The UTPCPL prohibits engaging in any "unfair or deceptive acts or practices in the conduct of any trade or commerce…."  73 P.S. § 201-3.

137.    Defendant's conduct, as described herein, took place within the Commonwealth of Pennsylvania and constitute unfair or deceptive acts or practices in the course of trade and commerce, in violation of §§ 201-2(4)(v), (vii), (ix), (xiv) and (xxi) of the UTCPL.

138.    Spotify engaged in deceptive trade practices in violation of the UTPCPL by failing to disclose and actively concealing their intention and ability to unilaterally discontinue use of the Car Thing after an unreasonably short period of time.

139.    Defendant violated UTPCPL §§ 201-2(4)(v) and (vii) by representing that its Car Thing has characteristics or benefits that they do not have and that the Car Things work with just a Spotify Premium account.

140.    Defendant advertised the Car Thing with intent not to sell them as advertised, in violation of UTPCPL § 201-2(4)(ix).

141.    Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of UTPCPL § 201-2(4)(xxi).

142.    Spotify owed Plaintiffs and Class Members a duty to Plaintiff and the Class Members a duty to disclose the true intention and capability of the Car Thing because Defendant: (a) possessed exclusive knowledge of its intent to discontinue usage of the Car Thing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the use and reliability of the foregoing generally, while withholding material facts from Plaintiffs and Class Members that contradicted these representations.

143.    Defendant intended that Plaintiffs and other Class Members would, in the course of their decision to expend monies in purchasing the Car Thing, reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the quality and time the Car Thing would be available for use.

144.     Defendant's failure to disclose and active concealment of its intention to discontinue the Car Thing were material to Plaintiffs and Class Members.

145.     Plaintiffs and the Class Members suffered ascertainable loss caused by Defendant's misrepresentations and its failure to disclose material information. Had they been aware of the unreasonably short period the Car Thing would function, Plaintiffs and the Class Members either would have paid less for their Car Thing or would not have purchased them at all. Plaintiffs and the Class Members did not receive the benefit of their bargain as a result of Defendant's misconduct.

146.     Plaintiffs and the other Class Members were injured as a result of Defendant's conduct in that Plaintiffs and the other Class Members overpaid for their Car Thing and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Spotify's misrepresentations and omissions

147.     Further, Section 201-(4)(xiv) of the UTPCPL provides that it shall be unlawful in the sale of goods to fail to comply with the terms of any written warranty given to the buyer at, or after a contract for the purchase of goods or services is made.

148.     Although Spotify and its agents were aware that the Car Thing was not going to be available to consumers for a reasonably expected time, or that Spotify could discontinue its service and use at its own behest at the time that Plaintiffs and Class Members purchased their Car Thing's, Spotify refused to provide a fix or reimbursement for such purchases.

149.     Plaintiffs and Class Members reasonably relied on Spotify's misrepresentations and omissions and expected that the Car Thing would not be rendered obsolete so soon after purchase, and not fit for their ordinary use. Further, Plaintiffs and Class Members reasonably

expected Spotify would honor its warranty obligations as represented to them at the time they purchased their Car Thing.

150.    The conduct of Defendant offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused avoidable and substantial injury to Car Thing owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

151.    Plaintiffs and Class Members have been damaged as a proximate result of Defendant's violations of the UTPCPL and have suffered damages as a direct and proximate result of purchasing their Car Thing.

152.    As a direct and proximate result of Defendant's violations of the UTPCPL, as set forth above, Plaintiffs and the Class Members have suffered ascertainable loss of monies and property, caused by Spotify's misrepresentations and failure to disclose material information and refusal to provide effective cost-free repairs pursuant to its warranty. Had they been aware of the unreasonably short period the Car Thing would function, Plaintiffs and the Class Members either would have paid less for their Car Thing or would not have purchased them at all. Plaintiffs and the Class Members did not receive the benefit of their bargain as a result of Defendant's misconduct.

153.    Plaintiffs and the other Class Members were injured as a result of Defendant's conduct in that Plaintiffs and the other Class Members overpaid for their Car Thing and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Spotify's misrepresentations and omissions

154.    Plaintiffs are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 201-9.2(a) and 201-

4.1 of the UTPCPL. Plaintiffs and Class Members are also entitled to injunctive relief, seeking an order enjoining Spotify's unfair and/or deceptive acts or practices under section 201-9.2(b) of the UTPCPL

## VII.    COUNT SEVEN: UNJUST ENRICHMENT

(Plaintiffs, individually, and on behalf of the Class and Subclasses)

155.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

156.    Plaintiffs bring this cause of action individually and on behalf of the Class and Subclasses.

157.    Spotify has received and retained a benefit from the Plaintiffs and inequity has resulted.

158.    Spotify benefitted through its unjust conduct by selling Car Things with the intention or ability to discontinue any useful value of the Car Thing, at a profit, resulting in a product that is worthless to Plaintiffs and Class Members, who overpaid for their Car Things, and/or would not have purchased these Car Things at all.

159.    It is inequitable for Spotify to retain these benefits.

160.    Plaintiffs and Class Members do not have an adequate remedy at law.

161.    As a result of Spotify's conduct, the amount of its unjust enrichment should be disgorged, in an amount to be proven at trial.

162.    Spotify's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

163.    Plaintiffs and the Class are entitled to restitution of the profits unjustly obtained plus interest.

**REQUESTS FOR RELIEF**

164.     WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class and Subclasses proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Spotify, as follows:

a. Declaring that this action is a proper class action, certifying the Class and Subclasses as requested herein, designating Plaintiffs as Class and Subclass Representatives and appointing the undersigned counsel as Class Counsel;

b. Ordering Spotify to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiffs and the other members of the Class and Subclasses;

c. Ordering Spotify to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class and Subclasses;

d. Ordering Spotify to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of the Class and Subclasses;

e. Awarding injunctive relief as permitted by law or equity, including enjoining Spotify from continuing the unlawful practices as set forth herein, and ordering Spotify to begin restitution and disgorgement of all amounts obtained by Spotify as a result of its misconduct, together with interest thereon, from the date of payment, to the victims of such violations;

f. Actual, treble, and/or statutory damages for injuries suffered by Plaintiffs and the other members of the Class and Subclasses in the maximum amount permitted by applicable law;

g. A refund in the amount of the MSRP to each Spotify Car Thing purchaser;

h. Injunctive and declaratory relief;

i. Ordering Spotify to pay attorneys' fees and litigation costs incurred by Plaintiffs for the benefit of the Class and Subclasses;

j. Ordering Spotify to pay both pre- and post-judgement interest on any amounts awarded; and

k. Ordering such other and further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

165.    Plaintiffs, individually and all others similarly situated, hereby demand a trial by jury as to all matters so triable.

Dated: May 28, 2024                                    Respectfully submitted,

                                                       **MILBERG COLEMAN BRYSON**
                                                       **PHILLIPS GROSSMAN PLLC**

                                                       */s/Tyler Litke*
                                                       Tyler Litke (#5715966)
                                                       Mitchell Breit
                                                       405 E. 50th Street
                                                       New York, NY 10022
                                                       Telephone: 865-232-1315
                                                       Email: tlitke@milberg.com
                                                                mbreit@milberg.com

                                                       Adam Edwards*
                                                       800 South Gay Street, Suite 1100
                                                       Knoxville, TN, 37929
                                                       Telephone: 865-232-1315
                                                       Email: aedwards@milberg.com

                                                       Leland Belew*
                                                       227 W. Monroe Street
                                                       Suite 2100
                                                       Chicago, IL 60606
                                                       Telephone: (312) 224-8685
                                                       Email:  lbelew@milberg.com

                                                       *Attorneys for Plaintiffs and the Proposed*
                                                       *Class*

                                                       *\*Pro hac vice forthcoming*